IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 14-cv-3278-WJM

ALEX H. DORFMAN,

   Plaintiff,

v.

CAROLYN COLVIN, Commissioner of Social Security,

   Defendant.

---

## ORDER VACATING AND REMANDING
## DECISION OF THE COMMISSIONER OF SOCIAL SECURITY

---

   This matter is before the Court on review of the Commissioner of Social Security's decision to deny Plaintiff's application for disability insurance benefits.  The Plaintiff filed an Opening Brief (ECF No. 13), the Commissioner filed a Response (ECF No. 16), and Plaintiff filed a Reply (ECF No. 17).  After reviewing the briefs and administrative record filed with the Court, the Commissioner's decision to deny Plaintiff's application for Social Security disability insurance benefits is vacated and remanded for further proceedings as described below.

## I.  BACKGROUND

   Plaintiff was born on August 11, 1961.  (Record ("R.") (ECF No. 10) at 205.)  According to Plaintiff, he was in excellent health until he had a stroke in January 2007.  (ECF No. 13 at 6.)  As a result of the stroke, Plaintiff developed significant memory and cognitive issues.  (R. at 9.)  Plaintiff's medical records indicate he has been diagnosed with several mental and physical conditions, including major depressive disorder,

glenohumeral osteoarthritis, gastro-esophageal reflux disease, and seizures.  (*Id*. at 13, 14-19, 438-441, 471-72.)  Plaintiff alleges a disability onset date of August 31, 2010. (*Id*. at 205.)  Plaintiff has past relevant work as an appraiser, a production manager or body shop supervisor, and a towing dispatcher.  (*Id*. at 49.)

Plaintiff's application for disability insurance benefits was denied on June 3, 2013 by Administrative Law Judge Jon Lawritson ("the ALJ").  (*Id*. at 51.)  Plaintiff appealed to the Social Security Appeals Council, which denied Plaintiff's request for review.  (*Id*. at 1-4.)

In his decision, the ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, from [the alleged onset date] August 31, 2010, through the date of this decision."  (*Id*. at 50.)  The ALJ made the following findings of fact and conclusions of law in accordance with the Commissioner's five-step sequential evaluation process.[1]  At step one, the ALJ found that Plaintiff has not engaged in any substantial gainful activity since the alleged onset date of August 31, 2010.  (*Id*. at 39.) At step two, the ALJ held that Plaintiff has the following severe impairments: status post stroke, right shoulder glenohumeral osteoarthritis, Factor V Leiden deficiency, seizure disorder, depressive disorder and anxiety disorder."  (*Id*. at 40.)  At step three, the ALJ held that Plaintiff's impairments do not meet or equal the severity of the established

---

[1]  The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.)  The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

listing of impairments under the governing regulations.  (*Id*.)  The ALJ then analyzed

Plaintiff's RFC, concluding that Plaintiff:

> has the [RFC] to perform light work as defined in 20 C.F.R.
> 404.1567(b) except that the claimant can lift and carry up to
> 20 pounds occasionally and up to 10 pounds frequently; the
> claimant can stand and/or walk for at least 6 hours in an 8-
> hour workday; the claimant can sit for at least 6 hours in an
> 8-hour workday; the claimant can occasionally reach
> overhead with the right dominant upper extremity; the
> claimant should never be exposed to hazards, such as
> climbing ladders, working at unprotected heights, working
> with or near moving machinery, and operating a motor
> vehicle as a requirement of the job; the claimant should
> avoid concentrated exposure to dust, odors, fumes, gases
> and other pulmonary irritants; and the claimant can
> understand, remember and carry out simple instructions.

(*Id*. at 42-43.)  The ALJ then ruled at step four that Plaintiff was unable to perform any

past relevant work.  (*Id*. at 49.)  However, considering the RFC assessment described

above, along with Plaintiff's age, education, and work experience, at step five the ALJ

determined that there are jobs that exist in significant numbers in the national economy

that Plaintiff can perform.  (*Id*.)  Those jobs include cashier and ticket seller.  (*Id*. at 23.)

On December 3, 2014, Plaintiff initiated this action challenging the ALJ's denial

of benefits, which is now before the Court.  (ECF No. 1.)

## II.  LEGAL STANDARD

The Court reviews the Commissioner's decision to determine whether substantial

evidence in the record as a whole supports the factual findings and whether the correct

legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.  *Id*.  "It requires more than a scintilla, but less than a

preponderance." *Lax*, 489 F.3d at 1084.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  ANALYSIS

Plaintiff argues that this matter should be remanded for the following reasons: (1) the ALJ failed to fully develop the record when he did not order a consultative examination; (2) the state agency physicians who opined as to Plaintiff's physical and mental RFC were was not privy to Plaintiff's complete medical record; (3) the ALJ's evaluation of Plaintiff's credibility was not based on substantial evidence; and (4) the Appeals Council erred in not appropriately considering the opinion of Plaintiff's treating psychologist, Dr. Karen Pascoe, Psy.D., of Jefferson Center for Mental Health.  (ECF No. 13.)  The Court addresses Plaintiff's final argument below, which alone warrants the remand of this action.

## A.  Dr. Pascoe's Opinion

Plaintiff argues that the Social Security Appeals Council's decision to disregard new, material evidence regarding Plaintiff's mental functioning was error.  (ECF No. 13 at 5.)  After the ALJ issued his decision, Plaintiff submitted a mental RFC assessment from his treating psychologist, Dr. Pascoe.  (R. at 520-524.)  The Appeals Council,

however, found that "this information [did] not provide a basis for changing the [ALJ's] decision."  (R. at 2.)

"Under 20 C.F.R. §§ 404.970(b) and 416.1470(b), the Appeals Council must consider evidence submitted with a request for review if the additional evidence is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision."  *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (internal quotation marks and brackets omitted).  If the new evidence qualifies for consideration, "[t]he Appeals Council shall evaluate the entire record including the new and material evidence submitted . . . .  It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."  20 C.F.R. § 404.970(b); *see also O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994) (holding that qualifying new evidence becomes part of the record for purposes of judicial review).

Here, the Appeals Council considered Dr. Pascoe's opinion and incorporated it into the record.  (R. at 2-5.)  As Dr. Pascoe's opinion was new, material to the determination of Plaintiff's RFC, and related to the period prior to the date of the ALJ's decision, it was appropriately considered by the Appeals Council.  (*Id*. at 520-24.)  Thus, the Appeals Council was tasked with determining, given the new evidence contained in Dr. Pascoe's report, whether the ALJ's decision was contrary to the weight of the evidence.  *See* 20 C.F.R. § 404.970(b).

Because Dr. Pascoe was Plaintiff's treating psychologist, her opinion presumptively bore significant weight.  The opinion of a treating physician is generally "entitled to great weight because it reflects expert judgment based on continuing

observation of a patient's condition over a prolonged period of time." *Williams v.*

*Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996).  Indeed, a treating source opinion

merits controlling weight, as long as two requirements are met:  (1) "the opinion is

well-supported by medically acceptable clinical and laboratory diagnostic techniques,"

and (2) "the opinion is consistent with other substantial evidence in the record."

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20 C.F.R.

§§ 404.1527, 416.927).  If the opinion does not merit controlling weight because one of

these two requirements is lacking, the ALJ must then determine what weight, if any, the

opinion deserves, considering six factors that include the length, nature, and extent of

the treatment relationship, the physician's specialization, and the consistency between

the physician's opinion and the record as a whole.  *Id.* at 1301.

The Appeals Council denied review of Plaintiff's case without discussion, and the

Court accordingly has no way to determine whether it applied the correct legal

standards in considering Dr. Pascoe's opinion.  The Court will therefore determine

whether the ALJ's opinion still aligns with the weight of the evidence after the inclusion

of Dr. Pascoe's RFC assessment in the record.

With regard to Plaintiff's mental limitations, the ALJ considered the opinions of

Drs. Brett Valette, a consultative psychologist, and Arthur Lewy, a state agency

psychological consultant, as well as treatment records from Dr. Pascoe and others at

Jefferson Center for Mental Health.  (R. at 95-106, 380-83, 461-75, 494-99.)  The ALJ

gave "great weight" to Dr. Valette's opinion and "significant weight" to Dr. Lewy's

opinion.  (*Id*. at 48-49.)  Plaintiff underwent a consultative examination with Dr. Valette

who observed that Plaintiff showed "impairment in all areas of memory functioning" and

6

"significant impairment in processing speed." (*Id.* at 382.)  Dr. Valette further observed

that Plaintiff exhibited "severe impairment in delayed memory, immediate memory,

visual working memory, visual memory, and . . . mild impairment in auditory memory."

(*Id.*)  Dr. Valette assessed Plaintiff a GAF score of 45 (indicating serious symptoms)

and noted Plaintiff would not "be able to multitask." (*Id.* at 383); *Langley v. Barnhart*,

373 F.3d 1116, 1123 n.3 (10th Cir. 2004) ("A GAF score of 41–50 indicates [s]erious

symptoms . . . [or] serious impairment in social, occupational, or school functioning,

such as inability to keep a job.").

Dr. Lewy issued a subsequent mental RFC assessment based on Plaintiff's

medical records, including Dr. Valette's opinion.  (R. at 101.)  Dr. Lewy found Plaintiff

markedly limited in his ability to understand and remember detailed instructions, and

moderately limited in his ability to maintain concentration for extended periods and

sustain an ordinary routine without special supervision.  (*Id.* at 103.)  Dr. Lewy further

found that Plaintiff would be moderately limited in his ability to complete a normal

workday and workweek without interruptions from psychological symptoms, and would

do best in a "simple, routine work environment." (*Id.* at 104.)  Based in large part on the

opinions from Drs. Valette and Lewy, the ALJ found that Plaintiff "could understand,

remember and carry out simple instructions and make simple work-related decision[s]

on a regular and consistent basis." (*Id.* at 48.)

However, Dr. Pascoe's RFC assessment submitted to the Appeals Council

includes severe limitations that significantly alter the record in this case.  Dr. Pascoe

diagnosed Plaintiff with major depressive disorder and post-traumatic stress disorder,

and opined that Plaintiff's mental impairments would preclude his performance in multiple categories for 15% or more of an 8-hour workday. (*Id*. at 521-23.) Dr. Pascoe noted that in a one-hour therapy session, Plaintiff would "ask 1-5 times, 'What are we talking about[?]'" (*Id*. at 524.) Dr. Pascoe further found that Plaintiff would be off-task more than 30% in a normal workday, would be absent from work five days or more per month, and would be unable to complete an 8-hour workday five days or more per month. (*Id*. at 523.) Perhaps most significantly, when asked how efficiently Plaintiff could be expected to perform a job, 8 hours per day, 5 days per week on a sustained basis, Dr. Pascoe responded, "Less than 50%." (*Id*.) Dr. Pascoe concluded that Plaintiff "puts in significant effort to make appointments and follow through with recommendations. He has a hopeful attitude but will not be successful at employment at this time or in the near future." (*Id*. at 524.) Given this new evidence, the ALJ's findings with regard to Plaintiff's mental impairments now appear "contrary to the weight of the evidence." *See* 20 C.F.R. § 404.970(b).

Defendant argues that Dr. Pascoe's opinion is entitled to little weight because it is inconsistent with her progress notes, and with the opinions of Drs. Valette and Lewy. (ECF No. 16 at 20.) Dr. Pascoe stated in each of her progress notes that Plaintiff's "Mental Status" was "Within Normal Limits," and his GAF scores were generally between 50 and 55. (R. at 495-99, 504.) However, Dr. Pascoe's RFC assessment specifically addresses Plaintiff's ability to engage in work activities on a regular, sustained basis—something her progress notes did not explicitly discuss. (*See id.*) Also, while Dr. Pascoe's assessment of Plaintiff's GAF scores do fall within the

moderate range, including the GAF score in Dr. Pascoe's RFC assessment at issue
here, a GAF score, standing alone, is not dispositive of Plaintiff's ability or inability to
sustain a normal work schedule. *Atkinson v. Astrue*, 389 F. App'x 804, 808 (10th Cir.
2010) ("By itself, a GAF score is not essential to the RFC's accuracy.").

Furthermore, there is no obvious inconsistency between Dr. Valette's report and
Dr. Pascoe's RFC assessment.  Dr. Valette examined Plaintiff and found he had
"significant impairment in processing speed," and impairment in "all areas" of memory
functioning, including "severe impairment" in multiple memory functioning categories.
(R. at 382.)  Dr. Pascoe made similar findings with regard to Plaintiff's mental
functioning, which led her to conclude that Plaintiff would be seriously hindered in his
ability to complete a normal workweek.  To the extent that a conflict exists between the
RFC assessments of Dr. Pascoe and Dr. Lewy, an ALJ considering both medical
opinions would have to find that one outweighed the other.  The Court will not speculate
on the weight the ALJ would have given to the opinions in question had they both been
before him, nor will the Court "substitute its judgment for that of the agency." *Salazar*,
468 F.3d at 621.[2]  The Court therefore rejects Defendant's argument that Dr. Pascoe's
opinion is inconsequential or is necessarily contradicted by the remaining record
evidence.

The Court accordingly finds that, in light of Dr. Pascoe's report, the ALJ's
decision is contrary to the weight of the evidence.  20 C.F.R. § 404.970.  This

---

[2]  The Court nonetheless notes that Dr. Pascoe treated Plaintiff over an eight month
span in ten individual therapy sessions, while Dr. Lewy issued his opinion upon a review of the
record alone, and never met or examined the Plaintiff.  (R. at 521.)

conclusion is bolstered by the fact that an "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting *on a regular and continuing basis*."  Social Security Ruling 96-8P, 1996 WL 374184 at *1 (emphasis added).  Dr. Pascoe's opinion thus goes to the heart of the ALJ's RFC assessment here, and demands that this matter be remanded for further proceedings.

Because the Court vacates and remands for the ALJ to consider Dr. Pascoe's RFC assessment, the Court need not address the other arguments raised by Plaintiff. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (where the ALJ's error affected the analysis as a whole, court declined to address other issues raised on appeal).  The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of those arguments.  The Court also does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties and the ALJ to fully consider the evidence and all issues raised anew.  *See Kepler v. Chater*, 68 F.3d 387, 391-92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case.") (citation and quotation marks omitted).

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED and this case is REMANDED to the Commissioner for further proceedings consistent with this Order.

Dated this 28th day of August, 2015.

BY THE COURT:

William J. Martínez
United States District Judge